MARY GRANT, Respondent, v. ABIAH A. TOMLINSON, Appellant.

Kansas City Court of Appeals, May 31, 1909.

1. **LANDLORD AND TENANT: Duty to Repair.** A landlord is under no obligation, in the absence of an agreement with a tenant, to keep the leased premises in repair.

2. ————: **Liability of Landlord.** A landlord making repairs on leased premises with the consent of the tenant is liable for negligently creating a dangerous condition on the premises.

3. ————: **Harmles Error.** Where a landlord was liable for injuries to a servant of the tenant, irrespective of whether the landlord was making repairs on the leased' premises at the time of the accident, or had completed them before that time, the error in an instruction, authorizing a verdict for plaintiff on the jury finding that the landlord was, at the time of the accident, engaged in making repairs where the evidence showed that he had completed them, was harmless.

4. ————: **Injury to Servant of Tenant: Liability of Landlord.** Where a landlord created a dangerous condition on leased premises by so constructing a platform over an excavation

as to leave six inches between the edge of the platform and the outer edge of the excavation, the fact that the condition might become more dangerous by a caving of the earth, which actually happened, did not relieve the landlord from liability for injuries to a servant of the tenant falling into the excavation.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*Gage, Ladd & Small* for appellant.

The plaintiff being the employee of Mrs. Bell, the tenant of the premises, cannot recover in this case against the landlord, unless the tenant herself could recover under like circumstances. Marcheck v. Klute, 113 S. W. 658; McGinley v. Trust Co., 168 Mo. 263; Peterson v. Smart, 70 Mo. 34. In such cases the tenant or employee can only recover when the use at the time being made of the premises, was such as the landlord, when he rented them to Mrs. Bell, had a right to anticipate would be naturally made of them, and the appellant was not bound to anticipate naturally that they would be used as an egress by any person not acquainted with them and in the nighttime without light, and as they were used by the appellee. For the foregoing reasons the court erred in overruling appellant's objections to any evidence being heard in the case, in overruling appellant's demurrer to the evidence, and in giving any of the instructions given for the appellee. Glaser v. Rothschild, 106 Mo. App. 418; Gleason v. Boehm (N. J.), 34 Atl. 886; Helsinbeck v. Guhring, 131 N. Y. 674; Robinson v. Crimmins (N. Y.), 120 App. Div. 250; Dailey v. Distler (N. Y.), 115 App. Div. 102; Piper v. Railroad, 156 N. Y. 226; Eisenberg v. Railway, 33 Mo. App. 85; Poindexter v. Paper Co., 84 Mo. App. 352; Boyd v. Springfield, 62 Mo. App. 456; Dailey v. Distler, 115 App. Div. (N. Y.) 102; Railroad Look-and-Listen Cases *passim.*

*Jay Read* for respondent; *Joseph A. Guthrie* of counsel.

A landlord owes a duty if he undertakes to make repairs, to execute them carefully, and when he undertakes to repair the demised premises, irrespective of any obligation to do so, and in making these repairs is guilty of negligence creating a dangerous condition therein, he is liable to a third person injured thereby who came upon the premises at the invitation of the tenant. Barman v. Spencer, 49 N. E. 9; Curtis v. Kiley, 153 Mass. 123; 18 Am. and Eng. Ency. of Law, 239. A landlord is liable to a tenant or person properly on his premises for injuries caused at common entrances by excavations or openings, and owes his tenant and those employed by such tenant the duty not to expose them to a dangerous condition of the place which reasonable care on his part would have prevented. Camp v. Wood, 76 N. Y. 92; Brunker v. Cummins, 133 Ind. 443; Toomey v. Sanborn, 146 Mass. 28; Leydecker v. Buntnall, 158 Mass. 292; 46 L. R. A. 93; 14 L. R. A. 238. A landlord, when he exercises his right to enter during a tenancy, and makes such permanent repairs as are indispensable to the due protection of his reversionary interest, is bound to see that all reasonable care and skill are exercised in making these repairs to the end that the tenant may not suffer, and is liable for injuries caused by negligence in making repairs. Sulzbacher v. Dickie, 6 Daly 476; Anderson v. Fleming, 66 L. R. A. 154; Mitchell v. Plant, 21 Ill. App. 148; Callahan v. Loughran, 102 Cal. 476; Little v. Macadaras, 29 Mo. App. 332; Little v. Macadaras, 38 Mo. App. 187. Whether or not the use at the time being made of the premises was such as the landlord when he rented them to Mrs. Bell had a right to anticipate would be naturally made of them, is a question for the jury to decide. McGinley v. Trust Co., 168 Mo. 257, 263. The court committed no error in refusing instruction number two, as asked, or in giving it in its modified form; as asked it

was erroneous, because a comment on the evidence, and because it withdrew the question of contributory negligence from the jury. As modified it was an absolutely correct declaration of law as far as it went, and if appellant desired any stronger statement as to the effect of contributory negligence, he should have asked for it. Brown v. Railway, 13 Mo. App. 467; State ex rel. v. Branch, 151 Mo. 622; State v. Donnelly, 9 Mo. App. 532.

BROADDUS, P. J.—This is a suit to recover damages for injuries alleged to have been sustained by plaintiff as the result of defendant's negligence.

The undisputed facts are that on the 10th day of November, 1906, Mrs. Martha B. Bell was the tenant of defendant Tomlinson, the owner of a three-story brick building and grounds at the northeast corner of Eleventh and Broadway streets in Kansas City; that the lower or ground floor of the building is so divided that one room faces Broadway and in the rear thereof there was at the time mentioned a dining room and kitchen; that at or near the rear end of the building and in its east wall was a door which provided a means of ingress and egress to and from the kitchen onto the outside premises in the rear and thence towards Eleventh street on the south side of the building.

It is also agreed that Tomlinson with the consent of his tenant, Mrs. Bell, had made certain improvements on the premises. They consisted in part of the erection on the outside of said east wall of a platform or floor, which persons going in or out of said door would necessarily pass over. Immediately below this platform defendant made an excavation of considerable depth.

Plaintiff's evidence tends to show that the platform did not entirely cover this excavation, but on the outer rim there was a space sufficient to admit the person of any one who should by accident fall into it. To remedy this defect, a couple of boards were laid across the exca-

138 App.—15

vation reaching from the porch to the earth. That plaintiff on the afternoon of the day in question entered into the services of Mrs. Bell and remained at the house until after dark. That when she got ready to leave for her home, all doors by which she could make her exit from the building were closed except this door in the east wall; that she was unfamiliar with the premises at this point, having entered previously by another door; that the cook of Mrs. Bell told her that she would have to go out by the back door and that she had better wait and go with her, as it was "a little rough" out in the backyard, "they have been building some out there;" that plaintiff said all right, then another employee, a colored woman, said to her, "Well, I am ready right now, just follow me and go with me;" that they started out in the dark, the colored woman in the lead, the plaintiff following; and that while plaintiff was passing over the planks she fell off into the excavation and was injured.

It is contended by plaintiff that the evidence shows that at the date of the occurrence the defendant was still engaged in making repairs on these premises, but this is denied by defendant, who asserts that he had completed them some time previously and had no control of the premises at the time.

Defendant in his evidence stated that he intended at first to erect a dining room over the excavation, but changed his mind and built the platform over the excavation for a porch; that the platform had been completed and that he did no more work upon it until in the next spring when he filled the excavation. There was no proof that defendant was under any obligation to make the improvements, but that he made them at his own instance with the consent of the tenant.

The tenant, Mrs. Bell, was made a party defendant to the suit, but the cause was dismissed as to her. Plaintiff recovered judgment and defendant appealed.

There can be no question but that the excavation imperfectly guarded was an act of negligence upon the

part of some one and that plaintiff was not guilty of contributory negligence. The only question in the case is, is the negligence under the law and evidence to be attributed to defendant Tomlinson.

It is the law that a landlord is under no obligation, in the absence of an agreement with the tenant, to keep the leased premises in repair. [Peterson v. Smart, 70 Mo. 34.] And it is further held in said case that a servant of the tenant cannot recover for injuries sustained by reason of the want of such repairs unless the tenant has such right of recovery. In a late case, this court held that in the absence of a covenant the landlord is under no obligation to repair the premises during the tenancy. [Graff v. Lemp Brewing Co., 130 Mo. App. 618.] Such seems to be the well-established law. And the St. Louis Court of Appeals holds that, "A landlord owes no greater duty to the tenant's children to keep premises in a reasonably safe condition than to the tenant himself." [Marcheck v. Klute, 113 S. W. 654.] The courts of this State seem to be in harmony and we do not deem it advisable to pursue the investigation further in order to ascertain the rulings of courts of other jurisdictions on the question.

Defendant insists that, having completed his improvements and no longer having any control over the premises, he would not be liable to the tenant for any injury she might receive on account of the defect in question, and he is therefore not liable to the servant.

It is held that, "A landlord is not liable for the drowning of his tenant's guest, a child of two years, by falling into an open hole, fifty-eight feet from the rear of the building, dug at the tenant's request." [Moore & Wife v. Logan Iron & Steel Co., 7 Atl. 198.] This case does not in our opinion sustain defendant's position as he claims it does, for the reason that the improvement here was not made at the request of the tenant, but, as before stated, was made at the plaintiff's own suggestion with the consent of the tenant.

We believe the principle governing the question of defendant's liability is stated by the Massachusetts court in Curtis v. Kiley, 26 N. E. 421, where it is said that, "A landlord who contracts with a plumber to perform work, requiring excavations about the premises, is liable for injuries sustained by a visitor to one of the tenants from falling into an excavation negligently left unguarded by the contractor, where it was so near the usual pathway as to render it unsafe." The Indiana court holds that, "Where the landlord, whether he has covenanted to repair or not, negligently creates a dangerous condition of the rented premises while making repairs, he is liable to one lawfully on the premises, who, without contributory negligence, is injured by reason of the dangerous condition of the same. [Barman v. Spencer, 49 N. E. 9.] Such is the law of Massachusetts. [ Toomey v. Sanborn, 14 N. E. 921; Leydicker v. Brintnall, 33 N. E. 399.]

We believe that, if the injury had been received by the tenant instead of her servant, by reason of the dangerous condition of the excavation, had she been at the time exercising proper care, she could have recovered for such injury. It was negligence upon part of defendant to leave the excavation in its condition notwithstanding it was dug by the permission of the tenant. Such permission implied that the defendant would in the performance of his work use that care and caution which a reasonably prudent man would have exercised, and that he would not leave it in a dangerous condition.

Instruction No. 1, given at the plaintiff's instance, is criticized because it authorized a verdict for plaintiff if the jury found that defendant was at the time of the accident engaged in making certain repairs and additions, etc. As we view the case, the defendant was not engaged in making repairs and had completed them before that time. But we hold it was an immaterial error and would make no difference in the result, whether he was then making repairs or had completed them, as he would be equally liable under either state of facts.

Complaint is made because the court refused to instruct as asked by defendant in his instruction No. 2. The instruction reads as follows:

"The court instructs the jury that if the plaintiff was told by the witness Mary Manning, as she was about to leave the kitchen mentioned in the evidence on the night on which she was injured, to wait and go out with the said Mary Manning, that they had been building outside and the place where plaintiff would have to go was a little rough, and that thereupon Lucy Fueil, another employee of Martha B. Bell, who was ready to go, said to the plaintiff in substance, "I am going out and you can go along and follow me," and that thereupon the said Lucy Fueil, leading the way, went out of said kitchen and plaintiff followed her and shut the kitchen door behind her, and that it was so dark that plaintiff could not see said Lucy Fueil and could not observe the way with sufficient clearness to follow her, but went ahead in the dark without saying anything further to the said Lucy Fueil or further inquiring the way, they will find a verdict for the defendant."

The instruction is based upon the theory that if a certain state of facts was found to exist the plaintiff was not entitled to recover. As the facts upon which the instruction was based were uncontroverted, it would have been, if it had been given, a direction to the jury to find for defendant. We are of the opinion that the acts of plaintiff as detailed in the instructions did not amount to negligence *per se,* but at most it was a question for the jury. The court properly amended it in that respect.

The modification of defendant's third instruction was proper. The vice of the instruction is two-fold. 1st, it assumes that plaintiff knew of the unsafe condition of the excavation, which was not justified by the evidence. There is no evidence going to show that she had any knowledge whatever of the existence of the excavation. The fact, that one of the servants said that improvements had been made and the ground out there was a *little*

*rough,* could not be said to be a notification to plaintiff that there was a dangerous pitfall on the way out. Ordinarily, the expression would merely convey to the mind the idea that the earth was uneven and nothing more. In the second place, it took from the jury the question whether or not plaintiff, notwithstanding any knowledge she may have had of the situation, was or was not in the exercise of ordinary care while she was following the servant out on her way to Eleventh street.

Instruction No. 3, asked by defendant and modified by the court, was also faulty in that it assumed that plaintiff knew that the premises were unsafe.

Defendant's instruction No. 1 was refused by the court. It is as follows: "If the jury believe from the evidence that the hole into which plaintiff fell was caused by the earth caving in after the platform mentioned in the evidence was built and completed, the jury will find a verdict for the defendant." We are of the opinion that the instruction was bad. It was admitted by defendant that there was a space of six inches between the edge of the platform and the outer edge of the excavation which he left in that condition. As it was shown that this space was large enough to admit the body of plaintiff, the defendant is justified in the inference that the wall of earth caved in in the meantime. But we believe that this would not constitute any defense to the action, as it was in an unsafe condition even with the six inch space and likely at any time to become more dangerous by a caving of the earth, which actually happened.

Objections are made to the action of the court in refusing certain other instructions asked by defendant, but we deem them not of importance sufficient for particular notice.

Finding no error justifying a reversal, the cause is affirmed. All concur.